# CHARLESTON.

ASHBY ADAMS *v.* JOHN L. TILLEY.

Submitted October 19, 1920.    Decided October 26, 1920.

1.  FORCIBLE ENTRY AND DETAINER—*Where Owner Peaceably Enters and Takes and Retains Possession the former Possessor Cannot Recover Possession.*
    If an owner of land in possession of another having no title

thereto, nor right of possession thereof, enters upon a portion of the same peaceably, that is, without violence or threat of violence, express or implied, to the occupant or his representatives, and retains possession thereof, the person whose possession has been so irrupted upon, is not entitled to recover from such owner possession of the land so taken by him. (p. 334).

2. SAME—*True Owner's Peaceable Entry is Not Unlawful.*

An entry upon land by the true owner thereof is not unlawful, unless effected by force.  (p. 334).

3. SAME—*One Ousted by Forcible Entry by Owner May Recover Possession from Owner.*

In the case of a forcible entry upon land in the possession of another, having no title nor right of possession thereof, by the true owner, the party ousted by such an entry may recover the possession thereof from him, but not otherwise.  (p. 334).

4. SAME—*Owner's Peaceable Entry on Land in Another's Possession is Not a Forcible Entry.*

An entry upon land in the possesison of another, by the true owner, merely against the will of the former and in a peacable manner, is not a forcible entry.  (p. 336).

5. DEEDS—*Call for Description Held Admissible to Identify Land Granted With That Reasonably Within the Description.*

A call in a description in a deed, susceptible of application to a tract of land owned by the grantor at the date of execution thereof, for monuments like some of those mentioned in the title papers under which he held such tract, is admissible evidence tending to prove identity of the land granted by the deed with so much of the land so owned as can be reasonably brought within the description.  (p. 336).

6. SAME.

A description in a deed executed, upon a valuable and substantial consideration, by one having perfect title to a tract of land claimed under the grantee in the deed, which calls for monuments like some of those mentioned in such title papers and is clearly susceptible of application to some of the land so owned before the grant, as is shown by the testimony of an experienced surveyor, based upon his surveys thereof and of adjoining and neighboring tracts, is sufficiently definite and certain to include so much of the land so owned and claimed as can be reasonably brought within it, as aforesaid, and to make

such deed a valid link in the claimant's chain of title thereto, in the absence of opposing evidence.   (p. 336).

(WILLIAMS, PRESIDENT, absent).

Error to Circuit Court, Wyoming County.

Action of unlawful entry and detainer by Ashby Adams against John L. Tilley. Judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*A. W. Reynolds, Col. Childers* and *M. P. Howard,* for plaintiff in error.

*R. D. Bailey, F. E. Shannon, M. F. Matheny* and *R. E. Hughes,* for defendant in error.

POFFENBARGER, JUDGE:

The judgment and practically directed verdict for the plaintiff, complained of in this action of unlawful entry and detainer between lessees, in which recovery of the possession of 11.2 acres of land is sought, stand upon the hypothesis of possession of the plaintiff, irrupted upon by the defendant, in the absence of good title in his lessor. The plaintiff made no effort to prove title in his lessors. He relied solely upon his possession under leases to him from the First National Bank of Pineville and two individuals, Dottie Wikel and C. M. Wikel, dated, respectively, March 1, 1918 and March 1, 1919, and the theory of a wrongful entry on the land by the defendant.

He invoked the doctrine of forcible entry and the trial court evidently applied it, by giving an instruction authorizing a verdict for him, if the jury believed the defendant had unlawfully entered upon the premises and withheld them from him even though they further believed the land belonged to the defendant's lessor. The defendant endeavored to prove title in his lessor and the instruction just mentioned implies that there was evidence of such title.

The proposition asserted by that instruction does not accord with the law, unless the entry was forcible in the legal sense of the term; and, since there is no evidence at all of a forcible entry, it is manifestly wrong. If it be assumed that the entry was unlawful, for want of title in the defendant's lessor, the

plaintiff being in possession at the time, and would have justified recovery upon that fact and possession in the plaintiff, it was not for those reasons forcible. *Franklin* v. *Geho,* 30 W. Va. 27, 35; *Fisher* v. *Harman,* 67 W. Va. 619; *Feder* v. *Hager,* 64 W. Va. 452; *Duff* v. *Good,* 14 W. Va. 682; *Olinger* v. *Shepherd,* 12 Gratt. 462; *Pauley* v. *Chapman,* 2 Rob. 235.   These decisions emphatically deny that an entry merely against the will of the occupant is forcible.   It would be both useless and wasteful of time and space, to quote from them for confirmation of the interpretation here put upon them.   The rule is different in some other states, but it is settled here as above stated, in accord with an overwhelming weight of authority.

The plaintiff resided on a portion of the land covered by his leases lying on the south side of a stream, and the defendant entered into possession of another unenclosed portion thereof, lying on the north side of the stream, without violence or threat of violence.   An agent of the lessor of the latter placed some fence wire on the ground, with which a space about one hundred feet square was fenced up by the lessee with some assistance, and then potatoes were planted in that space.   There is not the slightest evidence of either violence in the entry or any threat of violence, express or implied, under which it may have occurred.   The acts done on the land after entry are not evidence of force in the entry.

If, however, the plaintiff's actual possession extended beyond the stream and covered the land in controversy and there was neither evidence nor proof of title thereto in the defendant's lessor sufficient to sustain a finding of such title, the error in the instruction given for the plaintiff was harmless.   In substance and effect, it was a direction to find for the plaintiff, and, if a verdict for the defendant could not have been sustained on the evidence, the court could have properly directed a verdict for the plaintiff.   Hence, it is highly important to determine whether the defendant proved title in his lessor. If he did, the plaintiff had no shadow of right to recover, the entry having been peaceable.

The title of the defendant's lessor starts with a patent from the Commonwealth of Virginia to John Mullins for 36 acres of

land including the subject of this controversy.  He conveyed
that land together with 10 acres out of a 31 acre tract to his son,
John W. Mullins, who conveyed by the same description to
John M. Sizemore.  The next deed made by Wilson T. Gadd
and wife and John M. Sizemore to Edward Lambert is the one
in which, it is claimed, the chain of title breaks, by reason of
indefiniteness and uncertainty of description.  It admittedly
does not convey any part of the 36 acre tract lying south of '
the stream running through it, the Big Fork of the Guyandotte
River, nor call for any of its lines or corners south of the stream.
But it calls for a "black oak and maple" and "4 pop-paws
chestnut and birch," just as the patent calls for them.  As
to them, it uses the same terms.  If it conveys the part of the
Mullins patent lying north of the stream, agreeably to the
claim made for it, these calls and others, "the loer end
said survey," and "with the meanders of the river up," can be
readily applied to it.  The two Mullins deeds describe the
"black oak and maple" as being a corner of the "Sugar Run
Survey," necessarily lying nearly east of a portion of the Mul-
lins tract and north of part of it.  The Gadd-Sizemore deed
calls for another corner of the Sugar Run Survey, farther east,
and then for the lines of "said survey" to a "black oak and
maple."  These lines must come down the river in the direc-
tion of the "black oak and maple" corner of the Mullins patent,
for the description proceeds thus : "thence with the lines and
corners (of a tract not named) to the loer end said survey to
4 pop-paws chestnut and birch thence with the meanders of
the river up oppersit a corner of a 24 acre syrvey thence with
the lines to a white oak on the bank thence crossin the river
to the beginning."  If they did not run down the river, it
would be impossible to carry the description back up the river.
Running in that direction and following lines of the Sugar Run
Survey to a "black oak and maple," it is reasonably certain
that this description reaches the black oak and maple described
in the Mullins deeds as a common corner of the Sugar Run
Survey and the Mullins patent.  There is no proof as to whether
the Sugar Run Survey lies between the first line called for and
the river or back of that line, but that is immaterial, as the

lines would reach the corner of the Mullins survey in either case. From this point the description runs with lines to the lower end of a survey. The northern lines of the Mullins survey are the only disclosed lines that can answer this description and, following them, the paw-paw, chestnut and birch corner of the survey is reached. Support of this view is found in the fact that the first Mullins deed conveyed, with the 36 acre Mullins survey, 10 acres out of a 31 acre survey "lying at the mouth of Sugar River," which is shown on the plat as a long narrow strip on the north side of the Big Fork of Guyandotte River, the north lines of which correspond well with the description of the first lines called for in the Gadd-Sizemore deed, Tested by the scale on the plat filed this strip is not over 750 feet wide at the western end, and narrows down in its course to less than 100 feet and then widens again. A 10 acre area out of it may not reach beyond the eastern corner of the Mullins survey and probably does not. Sizemore got this 10 acre lot with the Mullins survey. The deed in which Gadd joined him applies with reasonable certainty to it and so much of the Mullins survey as lies north of the river. An engineer who has surveyed the Mullins tract and all other around and adjoining it swears the plat correctly delineates the Gadd-Sizemore conveyance, and, as put on the plat, it includes the land in controversy.

Bailey, who prepared the plat, had no personal knowledge of the land, lines or corners. Carr, who furnished him the information from which he made it, had surveyed many, if not all, of the adjoining and neighboring lands, as well as the tracts delineated on the plat, but he did not testify that he was able, from personal knowledge, to identify the lines and corners. If he had been, his evidence would have been much more satisfactory and valuable. Nevertheless, the location of the Mullins survey is not in controversy, and his surveying, as testified to by him, ties on to that survey, and is supported by the documentary evidence. The plat merely illustrates or delineates the documentary description and his work done upon the ground, and he swears he was able, by surveying, to bring the land in controversy within the description found in the Gadd-Sizemore deed, in the manner above indicated. The de-

scription in that deed agrees in part with the description of land conveyed to Sizemore. He owned the land in controversy, under a description found partly repeated in the deed in which he joined Gadd in the conveyance to Lambert. His title papers extended up the river, from the land in controversy, just as the description in said last mentioned deed does, and as the testimony of the surveyor shows it may do with a high degree of consistency. The deed recites a valuable and substantial consideration, a fact from which it may be inferred the grantee expected to acquire title. As Sizemore had the legal title to the land in controversy and at least color of title to the additional 10 acres and his deed calls for monuments of exactly the same kind as are called for in his title papers, the jury could have found, in the absence of evidence to the contrary, that a conveyance of the land in controversy was intended by the parties to the deed. The state of the title, the apparent purposes of the parties to the deed, the calls for like monuments in this deed and the prior deeds and the susceptibility of application of the description to the land in controversy, all combined, constitute very substantial evidence of the identity of the subject of the conveyance. Two patents calling for timber as monuments in the same terms, without other words of identity, are admissible on the question of identity. *Camden* v. *Haskill,* 3 Rand. 462. On a question of taxation of land, raised in an action of ejectment, proof of taxation of a tract of land corresponding in area and distance and direction from the court house, with the tract in controversy, is admissible. *Sulphur Mines Co.* v. *Thompson's Heirs,* 93 Va. 293. These authorities clearly sustain the view that the facts and circumstances to which reference has been made are admissible and probative evidence on the question of identity of the land in controversy with part of that conveyed by the Gadd-Sizemore deed. They make a *prima facie* case which is unopposed in any way, and the jury could not have properly found against it.

From this deed down to the Pocahontas Coal and Coke Company, the defendant's lessor, the chain of title is clear and unquestionable.

It results from the conclusions above stated, that the court

erred in giving plaintiff's instruction No. 2, which has been here interpreted and also in refusing to give an instruction asked for by the defendant, which if given, would have directed a verdict for him. Two other instructions asked for by him and based upon the evidence of title and peaceable entry should have been given also.

The judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and remanded.*