## CHARLESTON.

### G. R. C. WILES v. W. J. WALKER et al.

Submitted March 1, 1921.     Decided March 8, 1921.

1. FORCIBLE ENTRY AND DETAINER—*Where Entry Peaceable and Under Color of Title, Right to Possession Depends on Title.*

   In an action of forcible entry and detainer, wherein the relation of landlord and tenant does not exist, and the entry of the defendant was peaceable, without violence or threats of violence, express or implied, under claim of right and color of title, the right to possession depends upon the true ownership of the land. (p. 150).

2. SAME—*Right to Possession May Depend on Proof of Title.*

   Though an action of forcible entry and detainer relates only to possession and does not settle or adjudicate title, yet where the entry of the defendant was peaceable, the result may depend and turn on proof of title as showing the one entitled to the possession. (p. 151).

3. SAME—*Mere Fact That Entry Was Against Plaintiff's Will Does Not Make it Forcible.*

   The mere fact that the entry was against the will of the plaintiff does not constitute it a forcible entry, if in other respects it was peaceable. (p. 150).

4. SAME—*Plaintiff Has Burden of Proving Possessory Rights Superior to That of Defendant.*

   In such action the plaintiff carries the burden of proof, and cannot prevail, unless, by a preponderance of the evidence, he shows a possessory right superior to that of the defendant. (p. 151).

Error to Circuit Court, Mingo County.

Action by G. R. C. Wiles and others against W. J. Walker and others.    Judgment for plaintiffs, and defendants bring error.

*Reversed and rendered.*

*Goodykoontz, Scherr & Slaven,* for plaintiffs in error.

*Lafe B. Chafin* and *B. Randolph Bias,* for defendants in error.

LYNCH, JUDGE:

By this action of unlawful entry and detainer, heard by the court sitting in lieu of a jury, plaintiffs sought and obtained a judgment awarding them possession of two lots, Nos. 1 and 2, block G, of Keller Addition to the Town of Gilbert, from which order defendants prosecute this writ.    To sustain their claim to possession of the lots in question, plaintiffs rely upon three deeds: One dated June 20, 1907, by which R. A. Keller, trustee, conveyed the lots to A. J. Campbell; one of January 23, 1913, from A. D. Dickey, clerk of the county court of Mingo County, conveying them to A. A. Gaujot, trustee, pursuant to a tax sale and purchase in 1911 for an alleged delinquency in the payment of taxes assessed against the lots in 1909 in Campbell's name; and the last, dated April 4, 1913, by which Gaujot conveyed the property to plaintiffs.    The latter immediately or soon thereafter assumed possession through a tenant.    The lots were unimproved, save for a wire fence enclosing them, and were used by the tenant chiefly for garden purposes.    Later he sublet to another tenant who used the property "as a lot for his cows, horses and calves—Whatever he happened to want to put in there."    The possesion of the latter, however, seems to have been fitful, and sometime during 1917, 1918, or early in 1919, the exact date not being disclosed by the record, defendants entered upon the lots pursuant to a purchase of the property in 1917, removed the wire fence and readjusted it so as to inclose the lots with adjoining property owned by them, and have since exercised continuous dominion and control over them.    No force, violence or threats of violence characterized their entry.    On this question at least the evidence is clear and positive.    De-

fendant W. J. Walker testifies that no one was in possession when he entered upon the lots, and the subtenant, whose possession plaintiffs rely upon, admits he was away at the time, and does not claim to have had stock or a garden on the property.    At any rate, the taking of possession was peaceable, nor at any time since, so far as the record discloses, has unpleasantness developed.

In support of their claim of title, defendants rely upon deeds from A. J. Campbell, in whose name the alleged delinquency of 1909 occurred, to P. G. Hedrick, and from Hedrick to defendants, dated April 7, 1916, and July 9, 1917, respectively.    They also introduced two other deeds conveying the identical property, both dated August 4, 1919; one from T. F. Brammer and J. F. Bolen to P. G. Hedrick, "being two of the same lots conveyed to said T. F. Brammer and J. F. Bolen by deed from said P. G. Hedrick and his wife, dated the 11th day of December, 1909;" the other from Hedrick to defendants.    But defendants were not permitted to state their purpose in procuring these deeds or show what they sought to establish by them.    They also assail the validity of the tax deed of 1913 to Gaujot, which is the foundation stone of plaintiffs' claim of title, and in justification and support of their attack elicited from the deputy clerk of the county court of Mingo County the fact that lots 1 and 2, block G, Keller Addition to the Town of Gilbert, were not assessed or returned delinquent in the name of A. J. Campbell for the year 1909, and did not appear in the sales list of lots sold in 1911 for prior delinquencies.    Because of this apparent irregularity or defect, they charge that the entire proceedings based upon the alleged delinquency of 1909 were null and void.    Plaintiffs express a belief that the lots appeared on the land books for that year as Nos. 1 and 2, block 3, instead of block G, but introduce no record proof in support of their statement.    On the other hand, defendants show by the deputy clerk of the county court that on the official map of the Keller Addition to the Town of Gilbert all blocks are lettered, not numbered, and all deeds relating to the lots in question refer to them as in block G.    They also show by the same witness that it is only

on the official map of the Town of Gilbert, which is separate and distinct from the Keller Addition thereto, that the blocks are numbered instead of lettered.

The action of forcible entry and detainer is solely possessory in nature. By it the one instituting the proceedings seeks merely to regain possession of land which he claims another is wrongfully withholding from him. The action does not permit or sanction a binding investigation or finding as to the true title or ownership of the property in dispute. As said in *Hukill v. Guffey,* 37 W. Va. 425, 445: "The action of unlawful entry and detainer now bears in some degree the same relation to the action of ejectment, now final, which the act of ejectment, before 1st July, 1850, then not final, bore to the writ of right, which was then abolished. English speaking people have it ingrained into them that they ought not to be required to lose or give up their land without having, if they see fit, two trials; hence the action of unlawful entry, when not barred (three years), is frequently used as a preliminary skirmish to feel the enemy, before the final battle is brought on by an action of ejectment."

But though the title to land may not directly be involved, yet indirectly it may be decisive in determining the right to possession. Of course, where a defendant's entry upon land is forcible, rather than peaceful, his conduct is unlawful regardless of the question of his right or title to the property, and one who is thus deprived of possession may recover it in action of forcible entry and detainer even against the true owner. The law does not permit even the legal owner to assert his rights in such a violent and unlawful manner. *Fisher* v. *Harman,* 67 W. Va. 619; *Curtis* v. *Meadows,* 77 W. Va. 22. But where, as here, the entry of the defendant was peaceable, without violence or threats of violence, express or implied, under a claim of right, "the right to possession depends upon the true ownership of the land." *Chilton* v. *White,* 72 W. Va. 545; *Feder, Adm'r* v. *Hager,* 64 W. Va. 452; *Adams* v. *Tilley,* 87 W. Va. 332, 104 S. E. 601. The mere fact that the entry was against the will of the plaintiff does not constitute it a forcible entry, if in other respects it was peaceable. *Adams* v. *Tilley,* cited. It is in a situation such as this, where the entry is peaceable, that the

question of title may incidentally be involved.    In *Feder, Adm'r* v. *Hager,* cited, the court said, at page 454: "The right of possession belongs to title. * * * True it is that this action relates only to possession, and determines only the right to possession.    It does not settle or adjudicate title. But title may be the proof showing that one is entitled to the possession; in other words, the action may turn on proof of title.    In many cases in which this action is invoked the ownership of the land may be immaterial, but not in all."

Without expressing any final opinion upon the question of ownership of the two lots involved in this inquiry, it is sufficient to say that defendants' title is equally as good, perhaps better, than plaintiffs'.    The burden of proof naturally rests with the latter, and they have failed to show by a preponderance of the evidence that their right of possession is superior to that of defedants. Though much proof that doubtless was available and would have thrown light upon the nature of the delinquency proceeding upon which plaintiffs rest their claim, was not presented at the trial, the circumstances are such as to create doubt and suspicion with regard to the validity of the tax deed of 1913 and the proceedings upon which it is based.    Having failed to show possessory right superior to that of one who has taken peaceable possession under claim of right and color of title, plaintiffs cannot prevail in this action.    If, however, they desire further to prosecute their claim to a final conclusion, an adequate remedy exists which affords opportunity for a full development of the questions relating to the respective claims of the parties.

For the reasons stated, our order will reverse the judgment, and enter judgment here for the defendants.

*Reversed and rendered.*